STIEFLER *v.* McCULLOUGH.

[No. 13,880.   Filed February 27, 1931.   Rehearing denied June 2, 1931.   Transfer denied June 7, 1933.]

*Philip B. O'Neill,* for appellant.

*Bagot, Free & Bagot,* for appellee.

KIME, J.—This was an action by appellee on a complaint of two paragraphs, the first alleging liability under a written contract, the second alleging a partnership, insolvency, and praying for the appointment of a receiver. Appellant filed two paragraphs of answer, one a general denial and the other a cross-complaint. Appellee filed answer in general denial to the second paragraph of appellant's answer, also a reply and answer in general denial. Appellee then filed a supplemental first paragraph of complaint. Appellant then filed an additional paragraph of answer alleging no legal consideration. Appellee then dismissed his second paragraph of complaint.

The court rendered judgment for the appellee in the sum of $2,240.00 and the costs, and found that appellant take nothing by his cross-complaint. A motion for a new trial specifying that the decision was contrary to law, (b) the decision was not sustained by sufficient evidence and also other errors in the introduction of evidence and exhibits which are not of any moment. The overruling of this motion is assigned as error here.

It may be noted here that there was no application for a special finding of facts and conclusions of law.

The appellant had been the manager of a chain store of the credit apparel type in Anderson for six or seven

years, during which time the banking business of his store had been handled by the Citizens Bank of which appellee was president. The appellant, during his residence there, had purchased a house from the bank for the sum of $7,500.00 on which the above bank had a second mortgage for $4,500.00 and had also had other dealings with the bank connected with his personal financial affairs. The appellant conceived the idea of going into business alone when a favorable location presented itself. He talked to the appellee as the president and loaning officer of the bank at various times for a period of some ninety days, told him the prospects and asked for a line of credit to the extent of $5,000.00 which was assured him by the appellee. The appellee then, in the name of the bank, took a third mortgage on the house of appellant and wife, which had been sold them by the bank, and on which transaction the appellee had made a personal profit of $1,000.00 (indicating that they thought it had some value above the purchase price), an assignment of a certificate of stock of the par value of $1,000.00, and a pledge of diamonds, worth by uncontradicted evidence $2,000.00. They also signed a chattel mortgage covering all the stock and fixtures that were not yet purchased, but were to be purchased with the borrowed money. The bank then advanced $3,000.00 and appellee told appellant he would see about the other $2,000.00 later. Approximately one month later the appellant told appellee he had "purchased goods to the extent of the money he would let me have in addition to the $3,000.00," and that appellee "wondered what it would be worth to me to get the $2,000.00. I told him I was quite surprised. I told him that I thought the 8 per cent interest would be a sufficient amount. He said, 'wouldn't you give *me* more now.' " This startling bit of testimony is not specifically denied. Then this contract was dictated by the appellee in his

office at the bank, the contract reading in the first person as though the appellant himself had written it, phrases of which he (the appellee) had "copied out of a book," and which contract the appellant signed. Then the appellee had appellant sign it before a notary, who was an employee of the bank, as "the *free* act and deed" of said appellant. Which contract is as follows:

"Anderson, Ind., Dec. 22, 1924.

FOR VALUE RECEIVED, and in consideration of your procuring credit for me, which enabled me to start in business for myself, and in which I am now engaged, I hereby promise and agree to pay on the first day of each calendar month hereafter the sum of One Hundred Dollars ($100.00) so long as I may be engaged in the Cloak and Suit and Mens' Furnishing Business in the City of Anderson, Indiana, to Neel M. McCullough at the Citizens Bank, City.

The above to constitute a full payment for services rendered, and for any and all interest which you may have acquired, by reason of such assistance mentioned above; it being further understood that there is no further obligation on your part except such as you may wish to render me from time to time.

It is further understood that this obligation shall be binding upon my heirs, executors, administrators or assigns, and that this contract may be assigned by you.

JOSEPH STIEFLER.

State of Indiana, County of Madison, SS.

Personally appeared before me the undersigned, a Notary Public, in and for the county and state aforesaid, one Joseph Stiefler, who acknowledged the execution of the above contract as his free act and deed.

Benj. F. Alford,

Notary Public.

My commission expires Nov. 12, 1926."

There was introduced in evidence the following guarantee.

October 30, 1924.

"The Citizens Bank,
Anderson, Indiana.

For value received I hereby guarantee the payment of any monies advanced to Joseph Stiefler on his personal notes, except his mortgage note now owing, as and when same may mature and until such guarantee is revoked by me with your consent.

N. M. McCullough."

Appellee testified that it was filed with the bank but it does not bear any indication that it ever was filed, accepted, approved or consented to by the board of directors of such bank or that they ever saw it. And appellee testified that the board of directors knew very little about it. No minutes of any meeting relating to the guarantee were introduced or attempted to be introduced by the appellee.

The appellee prosecuted the action on the theory that in consideration of the furnishing of a line of credit by him he was to have a half interest in the business and that he later gave up his half interest for the above contract for $100.00 a month. Appellee specifically at several different times said that "he did not want to go into the business."

There is only the testimony of the two parties and the documentary evidence, as the testimony of a witness for the appellee discloses nothing of any weight or value.

Appellee contends that the filing of a bill of exceptions should be shown by order book entry, but the filing of same may also, in some cases, be shown by the certificate of the clerk. As was stated by the Supreme Court in *Howe* v. *White* (1904),

162 Ind. 75, 69 N. E. 684: "The fact that the bill was filed in this cause, and the date of such filing, must be shown either by an entry of record or by the certificate of the clerk." The former is the best practice and is followed by the better lawyers. *Hoffman* v. *Isler* (1912), 49 Ind. App. 284, 97 N. E. 188; *Ladoga Canning Company* v. *Corydon Can Company* (1912), 52 Ind. App. 23, 98 N. E. 849; *Federal Union Surety Company et al.* v. *Schlosser* (1917), 66 Ind. App. 199, 114 N. E. 875, 116 N. E. 759; *McMillan, Administrator* v. *Plymouth Electric Light and Power Company* (1919), 70 Ind. App. 336, 123 N. E. 446. In the case at bar there is no entry in the record showing the filing of the bill of exceptions, but the certificate of the clerk to the transcript states that "the bill of exceptions containing the evidence hereinabove inserted is the identical and original bill of exceptions duly filed by the Defendant in my office as clerk on the 14th day of August, 1929." We think it is sufficiently shown by the clerk's certificate that the bill of exceptions was duly filed in the cause, but the writer does not recommend that this practice be followed. The essential features of the record, while not in their proper order, may be found therein.

Appellee in his brief has also cited several points in the record and in the brief of the appellant which he contends are not in compliance with the law or rules of the court, but upon careful examination we find that there has been a somewhat poor but substantial compliance.

Before appellee can recover he must show that there was some consideration for the promise on the part of appellant to pay him the sum of one hundred dollars ($100.00) per month as long as he continued in business in Anderson. Appellee contends that he was a partner or owned an interest in the business until it was merged in the above contract on December 22, 1924. While owning such interest or

holding such partnership he attempted to borrow money from the bank for this business by means of a written guarantee which he says he executed on October 30, 1924, and which bears that date. If the bank loaned because of this written guarantee the consideration is illegal because the statute says: ·

"Whoever, being president, director, cashier, clerk, teller, officer or employee of any incorporated bank, or of any firm, corporation, person or association doing a banking business, shall, in any way, obtain, as a borrower, any of the funds of such bank, firm, corporation, person or association doing a banking business without first executing his note or other evidence of debt therefor, *bearing the written consent thereto of the board of directors* of any such incorporated bank, or the manager or managers of any other such firm, corporation, person or association doing a banking business *indorsed on such note or other evidence of debt,* shall be deemed guilty of a felony and, on conviction, shall be imprisoned in the state prison not less than two years nor more than fourteen years, and be fined in double the amount so received."

The guarantee was the undertaking of the appellee and is a direct, absolute, unconditional and original promise to pay to the bank. *Nading* v. *McGregor* (1890), 121 Ind. 465, 23 N. E. 283, 6 L. R. A. 686; *Hess et al.* v. *J. R. Watkins Medical Company* (1919), 70 Ind. App. 416, 123 N. E. 440; *Wright* v. *Griffith* (1890), 121 Ind. 478, 23 N. E. 281, 6 L. R. A. 639; *Metzgar* v. *Hubbard* (1899), 153 Ind. 189, 54 N. E. 761; *Ward* v. *Wilson* (1885), 100 Ind. 52, 50 Am. Rep. 763.

But the evidence does not uphold this theory.

The evidence shows that the board of directors knew very little (according to appellee's own testimony)

about the guarantee and did not consent in writing by endorsement thereon as provided by the above statute. There is a total failure to show that they loaned the money on the strength of this written guarantee. On the contrary the evidence plainly shows that the bank loaned the money on the security of appellant and wife together with collateral they posted.

There is, therefore, an absolute failure of consideration, the appellee has not sustained his complaint with sufficient evidence, and he must fail.

There is a line of cases holding that the act of the agent is the act of the principal and that even if this bank president had shown consideration for the contract the benefit would inure to the bank, in which case this contract would be usurious and the appellant could recover what he had paid over the legal rate.

This is to the writer's mind an unconscionable contract. An unconscionable contract has been defined to be such as no sensible man not under delusion, duress or in distress would make and such as no honest and fair man would accept. There exists here "an inequality so strong, gross and manifest, that it is impossible to state it to a man of common sense without producing an exclamation at the inequality of it." Elliott on Contracts, Vol. 1, §159. "Where the inadequacy of the price is so great that the mind revolts at it the court will lay hold on the slightest circumstances of oppression or *advantage* to rescind the contract." Elliott, *supra.*

It is not the policy of the law to restrict business dealings or to relieve a party from his own mistakes of judgment but where one party has taken advantage of another's necessities and distress to obtain an unfair advantage over him, and the latter, owing to his condition, has encumbered himself with a heavy liability or an onerous obligation for the sake of a small or in-

adequate present gain there will be relief granted. *McCormick* v. *Malin* (1841), 5 Blackford 509.

This cause is therefore reversed.

Neal, P. J., not participating.