NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 29, 2006
Decided January 18, 2007

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, Circuit Judge

Nos. 05-4215 & 05-4347

| | |
|---|---|
| EMPIRE FIRE AND MARINE INSURANCE COMPANY, | Appeals from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 04 C 21 |
| JAMES F. SARGENT, KAREN RITCHIE, M.M. by her parent and next friend Karen Ritchie, RANDY McVEY, as personal representative of the estate of Rachel S. McVey, and B.M. by her parent and next friend Randy McVey, | John Daniel Tinder, *Judge.* |
| *Defendants-Appellants.* | |

### O R D E R

Around noon on a late August day in 2003, James Sargent rented a car from Enterprise Rent-A-Car in Madison, Indiana.  He signed a standard rental agreement and paid an additional $8.99 per day for an optional supplemental liability policy (SLP) from Empire Fire and Marine Insurance Company.  It provided excess coverage equal to the difference between actual damages (up to $1

million) and Indiana's statutory minimum insurance amounts.  The Indiana minimum is $50,000 for a single accident.

Five hours after renting the car, Sargent drove it across the centerline of a highway and crashed, head-on, with a vehicle being driven in the opposite direction. A passenger in the other car (Rachel McVey) was killed and others, including the driver (Karen Ritchie, who was Rachel's mother), were very seriously injured. Sargent was drunk--with a blood alcohol level of 0.193--at the time of the accident. Subsequently, Sargent pled guilty to numerous criminal counts growing out of the accident, including a charge of manslaughter.  This civil suit (there is diversity jurisdiction) concerns whether the SLP excess policy can be called upon to pay damages for the accident.  Although damages have not been established, it seems fair to say that they easily exceed the limit set by the policy, which in this case would be $950,000.

Unfortunately for those injured and Sargent, the SLP contained a crystal-clear exclusion for drunk driving.[1]  Empire relied on the exclusion and refused to defend and indemnify Sargent against the claims made by the victims of the accident.  The company filed a declaratory judgment action in the District Court for the Southern District of Indiana (Judge John Daniel Tinder presiding) asking that the court find that no coverage was provided.  All parties filed motions for summary judgment.  Sargent and the Ritchie family argued that the language of certain other exclusions in the rental agreement (incorporated by reference into the SLP) was too broad and rendered the policy illusory or, alternatively, unconscionable.  The district court granted Empire's motion, holding that the drinking and driving exclusion was valid and that the policy was neither illusory nor unconscionable. This appeal followed.

We review a district court's grant of summary judgment de novo and will uphold it if no genuine issue of material fact exists and the nonmovant is entitled to judgment as a matter of law.  We draw all factual inferences in favor of those against whom summary judgment has been granted.  Hrobowski v. Worthington Steel Co., 358 F.3d 473, 475 (7th Cir. 2004); Rogers v. City of Chicago, 320 F.3d 748, 752 (7th Cir. 2003).  The substantive law of the forum state, Indiana, must be

---

[1]  The exclusion reads:

13.  VIOLATIONS OF THE CONTRACT:   A violation of the contract shall exist if the car is used or driven: . . .  (D) By any person if there is reasonable evidence they were under the influence of narcotics, intoxicants, or drugs . . . .

applied as it would be by the Supreme Court of Indiana. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Wolverine Mut. Ins. v. Vance, 325 F.3d 939, 942 (7th Cir. 2003).

This case presents a question of law,[2] but to the extent that the facts put the dispute in context, they are not helpful to Sargent (even when all inferences are drawn in his favor). When he went to Enterprise, he had been drinking heavily for the past few days. Because he thought the Enterprise agent at the desk might not rent to him, he popped a peppermint and smoked a cigarette to mask any smell of alcohol that he may have had. Although it's disputed what he and the agent discussed, it is undisputed that he signed the front of the rental agreement and checked the box indicating that he read the terms and conditions on the back. It is also clear that there was an SLP "summary of coverage" brochure on the counter highlighting the drunk driving exclusion. Sargent, who certainly fell within the exclusion's scope, is bound by it unless Empire is prevented from relying on it. Kelly v. Hamilton, 816 N.E.2d 1188, 1193-94 (Ind. Ct. App. 2004); Fid. & Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., 25 F.3d 484, 486 (7th Cir. 1994).

In order to get over this hurdle, Sargent argues that coverage was illusory, or, alternatively, that his agreement with Empire was unconscionable. He contends that the rental agreement's exclusions for operating the vehicle with "any illegal purpose" or "in an imprudent manner" are so broad that they essentially wipe out coverage and render the policy illusory. "An insurance provision is considered illusory if a premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." Schwartz v. State Farm Mut. Auto. Ins. Co., 174 F.3d 875, 879 (7th Cir. 1999) (citations omitted). In Indiana, these types of contracts are void against public policy. Meridian Mut. Ins. Co. v. Richie, 540 N.E.2d 27, 31 (Ind. 1989), vacated, 544 N.E.2d 488, 489-90 (Ind. 1989); Everett I. Brown Co., 25 F.3d at 490. Judge Tinder granted summary judgment in Empire's favor because he concluded the exclusions still left room for coverage in a reasonable number of scenarios.

We are more troubled by the exclusionary language than the district court was. Indiana law uses the terms "negligent" and "imprudent" interchangeably. See Central Transp., Inc. v. Great Dane Trailers, Inc., 423 N.E.2d 675, 678 (Ind. Ct. App. 1981) (the standard of care for negligence is "that which ordinary prudent persons would exercise under the same or similar circumstances"); Neal v. Home

---

[2] It is important to note that no argument is advanced to the effect that a drunk driving exclusion in an excess auto insurance policy violates the public policy of Indiana.

Builders, Inc., 111 N.E.2d 280, 285 (Ind. 1953) (same).  Empire's "imprudent manner" exclusion could arguably be construed to eliminate coverage for all negligent acts.

If the "imprudent manner" exclusion did preclude coverage for all negligent acts, it would drastically reduce the SLP's value to consumers.  After all, "in practically every incident out of which liability arises under [an automobile liability] policy there is a violation of some traffic law or regulation.  It is obvious that protection against liability for negligence is the primary reason for holding such a policy."  Nat'l Mut. Ins. Co. v. Eward, 517 N.E.2d 95, 101 (Ind. Ct. App. 1987) (emphasis added).  The "any illegal purpose" language is also problematic for the same reason.  As Eward notes, violations of traffic laws frequently give rise to claims under automobile insurance policies.  Empire's "illegal purpose" provision could therefore arguably keep Sargent from recovering if, for example, he committed a minor traffic infraction like driving 30 mph in a 25 mph zone.

Even if we assume that aspects of the SLP are illusory, however, the remedy in Indiana is to enforce the objectively reasonable expectations of the insured.  Schwartz v. State Farm Mut. Ins. Co., 174 F.3d 875, 879 (7th Cir. 1999); Davidson v. Cincinnati Ins. Co., 572 N.E.2d 502, 508 (Ind. Ct. App. 1991);  Monticello Ins. Co. v. Mike's Speedway Lounge, Inc., 949 F. Supp. 694, 703 (S.D. Ind. 1996); Eli Lilly & Co. v. Home Ins. Co., 482 N.E.2d 467, 470-71 (Ind. 1985).  And Sargent cannot establish, in the face of the clear exclusion, that it was his reasonable expectation to be covered for damages caused by his driving while drunk.  Empire's drunk driving exclusion was highlighted in the brochure.  It would be objectively reasonable for Sargent to expect negligence coverage--but patently implausible, in light of the clear exclusion, to expect coverage for an accident caused while he was driving drunk with a blood alcohol level of 0.193.[3]  See Lexington Ins. Co. v. Am. Healthcare Providers, 621 N.E.2d 332, 339 (Ind. Ct. App. 1993) ("an insurer cannot purchase an insurance policy which explicitly excludes claims involving insolvency and reasonably expect the policy to cover claims involving insolvency").  Therefore, his illusory contract argument is ultimately fruitless, since even if it carried the day he would still not be able to recover.

We also agree with the district court that Sargent's contract with Empire was not unconscionable.  An "unconscionable contract" has been defined, albeit in rather

---

[3] If Empire were trying to wiggle out of providing coverage based on the general exclusions by, for example, arguing that Sargent operated the car in an "imprudent manner," it would probably be unsuccessful.

dated terms, to be "such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." Stiefler v. McCullough, 174 N.E. 823, 826 (Ind. Ct. App. 1933). The SLP was an excess policy of optional coverage that Sargent didn't have to buy. He could have rented the car without paying the extra charge for Empire's supplemental coverage. It is difficult to imagine how Sargent could show unconscionability when voluntarily purchasing optional excess coverage, all the while trying to mask any hint that he had been drinking. And Sargent wasn't renting the car out of necessity--he just wanted it so he could "get out and be with friends." See Clanton v. United Skates of Am., 686 N.E.2d 896, 899 (Ind. Ct. App. 1997) (a signed release was not unconscionable because the skater was skating "for purely personal enjoyment, not out of any economic or other need").

As the district court noted, if Sargent read the material available to him, he would have been on notice that his drunk driving would not be covered. The fact that he easily could have discovered this, but didn't, points away from unconscionability on Empire's part and towards carelessness on his part. The bottom line is that Empire properly relied on the SLP's drunk driving exclusion. Neither Sargent's illusory coverage argument nor his unconscionability argument can overcome the fact that the policy clearly afforded no coverage if Sargent was driving drunk and had a blood alcohol level of 0.193 when the accident occurred.

The judgment of the district court is AFFIRMED.